J. A. WATSON v. F. C. KERR ET AL. Appellants.

Court en Banc, October 8, 1926.

1. **APPEAL: Timely Filing: Dismissal.** Whether the judgment was entered, motion for new trial overruled and appeal granted on March 22nd or March 31st, a certified transcript of the judgment and order granting the appeal filed in this court on the eighteenth day of the next August was timely filed.

2. ———: ———: **Untimely Motion for New Trial: Dismissal.** Even if the motion for a new trial was filed more than four days after judgment, the appeal cannot be dismissed where the transcript of the judgment and order granting the appeal was timely filed in this court, for the record proper would still be for review.

3. ———: **Motion for New Trial: Filing: Confusion in Dates.** The certified transcript shows that the judgment was entered, motion for new trial overruled and appeal granted on March 22nd. The abstract shows that the judgment was entered March 31st, and motion for new trial filed and overruled April 1st. **Held,** that a part of the transcript cannot be used to contradict the abstract and the other part ignored; the recitals of the transcript alone, and the recitals of the abstract alone, separately show that the motion for a new trial was filed within four days after judgment; and as appellant has filed an additional certified transcript showing the judgment was entered on March 31st and the motion for new trial was filed and overruled on April 1st, these dates are taken as true.

4. ———: **Serving Abstract: Thirty Days before Reset Date.** Where the case was set for the October term, and by agreement of parties was reset for the April term, a serving of the printed abstract upon respondent thirty days before the reset date of the April term is timely served. Where the case is set for a rehearing by agreement of parties, the appellant is not required to serve his abstract upon respondent thirty days before the date on which the case was originally set for hearing, but it is timely served if served thirty days before the date for which the case is reset for hearing.

5. ———: **Bill of Exceptions: In Companion Case.** A bill of exceptions filed and approved in one case cannot be treated as a bill of exceptions in another case, in the absence of an agreement to that effect. Where the bill of exceptions incorporated in the abstract of the record in the instant case recites that it is the bill of exceptions filed in another case, but does not recite that it is the bill of exceptions approved, filed and made a part of the record in the instant case, and there is no stipulation or agreement shown by the record or otherwise that it was to be taken and considered as and for a part of the record in the instant case, such bill cannot be accepted as a proper bill of exceptions in the instant case, and therefore nothing but the record proper is for review.

6. ·COUNTY WARRANTS: **Payment: Injunction: Threatened Injury: Sufficient Pleading.** Where the petition in a suit by a taxpayer to restrain the county treasurer from paying warrants isued by the county court, alleges that there is in the county treasury to the credit of the various funds sufficient moneys to pay said warrants, and the holders are demanding payment in the order in which the warrants are presented, and the answer admits that there is in the treasury sufficient sums of money to pay such warrants, collected from the taxes of the preceding year, against which said warrants are a legal charge, and that the holders are asking that they be paid, the petition sufficiently charges that the county treasurer is about to pay out of the funds of the current and preceding year the warrants sought to be canceled, and in that respect states a cause of action—at least a cause of action good after judgment. The petition in effect charges that the county treasurer was about to and would do his official duty, unless restrained.

7. ———: ———: ———: **Irreparable Injury.** In a suit by a taxpayer to enjoin the county treasurer from paying county warrants, wherein the petition alleges that the county court had no lawful authority to incur the indebtedness or to issue such warrants and that plaintiff and other taxpaying citizens have no remedy except by injunction, it is not necessary that the petition go further and allege facts showing impending and irreparable injury or mischief and that the apprehension of such injury or mischief is well founded. The plaintiff has no personal action against the county treasurer, if he pays the warrants, and their payment therefore would work irreparable injury to plaintiff and other taxpayers. Cases holding such allegations of irreparable injury to be necessary relate to suits between private persons to restrain private wrongs, wherein insolvency or some other existing fact makes an action at law inadequate.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 1807, p. 208, n. 10 New; Section 1811, p. 214, n. 51 New; Section 2084, p. 402, n. 52, 57 New; Section 2221, p. 481, n. 76; Section 2236, p. 491, n. 54; Section 2288, p. 515, n. 2; Section 2391, p. 582, n. 44 New. **Counties,** 15 C. J., Section 358, p. 645, n. 35. **Injunctions,** 32 C. J., Section 540 p, 327, n. 14; Section 543, p. 329, n. 27.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer,* Judge.

AFFIRMED.

*Frank H. Farris, Homer Rinehart* and *James Booth* for appellants.

(1) The purchase of the poor farm was a current expenditure for the year 1922, and warrants drawn on the contingent fund in the payment of said purchase stand upon a parity with other warrants drawn against the same fund. Secs. 9458, 9459, R. S. 1919; Watson v. Kerr, 312 Mo. 549. (2) Respondent admitted in his pleading that at the time he filed his suit there was money in the hands of the County Treasurer in each of the various funds involved herein, sufficient to pay the warrants in question, and such admission was concurred in and agreed to by appellants in their answer. This admission then becomes a conceded fact; and, if a fact, then respondent's petition failed to state facts which entitled him to any relief. Admissions in pleadings are conclusive, are indisputable, are judicial admissions concluding the parties who make the same, binding the parties, and estop each of them from denying what he therein admits to be true; and any testimony which tended to contradict such admissions was inadmissible and could not be considered by the court. 31 Cyc. 214; Call v. Moll, 89 Mo. App. 390; Ry. v. Iron Works, 117 Mo. App. 164; Walsh v. Walsh, 226 S. W. 246; (3) This contract neither raises the rate of taxation beyond the constitutional limit nor creates a debt in excess of the revenues for any year, for the warrants here involved are not payable except out of the surplus which may arise in these funds. Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 195; Harris v. Bond Co., 244 Mo. 693. (4) These warrants when issued were valid, and the fact that the surplus did not arise in the year 1922 out of which to pay them does not justify their cancellation. Their payment must be in the order provided by law, and out of such surplus when it does arise. State ex rel. v. Johnson, 162 Mo. 629, Secs. 12859, 12860, are in perfect harmony with Secs. 9458, 9459, R. S. 1919. Watson v. Kerr, 279 S. W. 695. (5) The fact that respondent was permitted, in the face of his admissions, to show that there was not sufficient money to pay these warrants does not invalidate the debt. These warrants were to be paid out of a surplus and not out of the current fund. The contingent warrants were to be paid out of the current funds, and that payment has been upheld by this court. Randolph v. Knox County, 114 Mo. 142; State ex rel. v. Payne, 151 Mo. 673; Kansas City Ry. Co. v. Thornton, 152 Mo. 575; State ex rel. v. Allison, 155 Mo. 334; State ex rel. v. Johnson, 162 Mo. 629. (6) The petition of respondent did not state a cause of action against appellants. It did not charge that the county treasurer was about to or intended to pay any of the warrants which he seeks to cancel out of the current funds of the county for the year 1922 or 1923. The remedy of injunction cannot issue unless the facts charged show some threat-

ened or intended act which would be injurious to the petitioner. There is nothing in the pleadings which tends to show that the county treasurer intended or was about to pay these warrants out of the current funds, or out of any funds other than the surplus as provided by the contract. Martin v. Bennett, 139 Mo. App. 243; Black v. Ross, 37 Mo. App. 257; Williams v. School District, 167 Mo. App. 480; Brier v. Bank, 225 Mo. 683.

*J. A. Watson, W. D. Jones, Lorts & Breuer* and *Jones & Jones* for respondent.

(1) The statute, Sec. 5459, R. S. 1919, expressly provided that a poor house and infirmary site acquired under provisions of Section 5458 may be paid for out of any money in the county treasury belonging to the contingent fund or out of any surplus in any other fund at the close of the fiscal year after the payment of all warrants drawn during such year against such fund and of all other previously issued and outstanding warrants against the same; and the undisputed evidence in this case shows that there was no surplus in any of the funds of the county at the end of the fiscal year and that there were outstanding county warrants for prior years of 1920 and 1921 against all the funds of the county amounting in the aggregate to $9,430.23. The warrants issued by the county court, $4,000 on the salary fund, $7,000 on the pauper and insane fund and $1,000 on the jury and election expense fund in part payment of this poor house site, are void and the court properly rendered judgment for plaintiff. Book v. Earl, 87 Mo. 254. (2) The attempted purchase of the 200 acres of land by the county court on the 16th day of March, 1922, not being in conformity with the law and being the creation of an indebtedness against Phelps County, for the year 1922 beyond the constitutional limit, was null and void. Book v. Earl, 87 Mo. 254; Anderson v. Ripley County, 181 Mo. 64; Trask v. Livingston County, 210 Mo. 582, L. R. A. (N. S.) 1048; R. S. 1919, sec. 2164. (3) The acquisition by the county of a 200-acre farm as a poor house and infirmary site was an addition to the assets of the county of a permanent nature and does not come within the term of current expenses, which are identical with running expenses. State ex rel. v. Payne, 151 Mo. 663; Taylor v. Mayo, 28 L. Ed. (U. S.) 163; 3 Words and Phrases, p. 1792; Book v. Earl, 87 Mo. 246; State v. Marion County Commrs., 21 Kan. 434.

BLAIR, C. J.—Action by resident taxpaying citizen of Phelps County against the treasurer of said county and others to restrain said treasurer from paying $12,000 in warrants issued by the County Court of Phelps County in part payment for land purchased by said

county from appellant H. R. McCaw, for use as a poor farm, at an agreed price of $17,000, and to cancel said warrants upon the ground that the county court had no lawful authority to incur indebtedness therefor or to issue such warrants. A change of venue was granted to the Franklin County Circuit Court. Upon the trial, judgment was entered in favor of plaintiff and against defendants restraining the said treasurer from paying said warrants, and restraining other defendants from collecting said warrants, and cancelling said warrants. Thereupon defendants were granted an appeal to this court.

This is a companion case to the case of Watson v. Kerr, which was decided by this court January 23, 1926, and is reported in 312 Mo. 549, 279 S. W. 692, wherein the judgment of the trial court was affirmed. In that case it was sought to restrain the payment and to secure the cancellation of warrants aggregating $5,000, issued and payable out of the contingent fund of Phelps County for the same purpose for which the warrants involved in this case were issued and made payable out of the pauper and insane, jury and election, and salary funds.

Respondent has filed a motion to dismiss the appeal. Said motion was taken with the case and must be first determined. On August 18, 1924, appellants filed in this court a certified copy of the judgment and order granting an appeal, from which it appears that judgment was entered, motion for new trial overruled and appeal granted March 22, 1924. The abstract of the record shows that judgment was entered March 31, 1924, motion for new trial filed and overruled April 1, 1924, and appeal granted the same day. Whatever the correct dates may be the certified transcript of the judgment and order granting the appeal was timely filed in this court. [Sec. 1479, R. S. 1919.]

**Dismissal.**

Appellants contend that the judgment was entered March 22, 1924, and that the motion for new trial was not filed until April 1, 1924, or more than four days after judgment. Even if that be true, it would constitute no ground for dismissal of the appeal, as the record proper would still be here for review, because of the granting of the appeal and timely filing of the certified transcript. Aside from that, neither the certified transcript of the judgment and order granting the appeal nor the abstract shows that the motion for new trial was not timely filed. There is embodied in the recitals of the judgment itself a recital that such proceeding was had March 22, 1924. But the record entry shown by the abstract fixes the actual date of the judgment as of March 31, 1924. Outside of the different dates of the judgment shown by the abstract and the certified transcript of the judgment and order granting the appeal, there is no showing by appellant that the motion for new trial was not actually filed within

**Motion for New Trial.**

315 Mo.—50.

four days after judgment was rendered, whichever be the correct date of the entry of such judgment. The abstract shows that it was timely filed and the certified transcript of the judgment and order granting appeal shows that it was timely filed, because said motion is there shown to have been overruled within four days after entry of judgment.

We cannot take the certified transcript by itself to show that the judgment was entered March 22nd and disregard the other recitals in said transcript; nor can we take the abstract of the record by itself to show that the motion for new trial was not filed until April 1st and disregard other recitals in the abstract. After respondent filed his motion to dismiss the appeal, appellants filed an additional certified transcript of the judgment and record entries and this corresponds with the recitals of the original abstract of the record.

Confusion in dates is apparent. The several documents before us, inconsistent and contradictory as they are, indicate regrettable looseness in the method of keeping and certifying the records of the trial court. Appellants' contention that the case was actually heard and taken under advisement on March 22nd and judgment rendered March 31st, is probably correct. Respondent has not shown that the motion for new trial was not filed within four days after judgment, whichever date was the date of its entry. We accept the recitals of the abtract in the respect.

As a further ground for the dismissal of the appeal, respondent contends that the appellants did not serve upon him a copy of the printed abstract of the record within the time prescribed by Section 1479, Revised Statutes 1919, which provides that the time of such service shall be fixed by rule of the appellate court.

**Serving Abstract.** Our Rule 11 provides that appellant shall serve upon respondent a copy of his abstract of the record at least thirty days before the case is set for hearing. The case was *reset* for hearing in this court and actually heard here May 3, 1926. Respondent was served with a copy of appellants' abstract of the record April 2, 1926, or more than thirty days prior to the date the case was actually heard. Such service was timely, unless appellants were required to serve upon respondent a copy of their abstract at least thirty days before the case was originally set for hearing at the October term, 1925.

Respondent contends that appellants were required to do this. We are not cited to any ruling of this court in support of such contention. Respondent agreed to the setting over of the hearing from the October term, 1925, to the April term, 1926. If he desired to take advantage of appellants' alleged default at the October term, he should have moved for dismissal at that time. We have held that the granting of a rehearing in a case or a transfer of a case from Division

to Court en Banc and the date of hearing fixed thereafter determine the time when abstracts of record shall be served. [Morris v. Kansas City Light & Power Co., 258 S. W. 431, and cases cited therein.] For the same reason, the date upon which a case is reset for hearing should and does fix the time when the abstract of the record must be served upon respondent and the abstract in this case must be regarded as having been filed in time. Especially would it be unjust and inequitable to hold otherwise, when the resetting was by agreement of the parties and appellant has thereafter and by reason of such agreement incurred the expense of preparing and printing his abstract.

Another reason for dismissal of the appeal urged by respondent is that the abstract does not show the filing of any bill of exceptions in this case, but does show affirmatively that the bill of exceptions incorporated in said abstract is actually the bill of exceptions filed in the companion case above referred to. This would constitute no ground for the dismissal of the appeal because, even if that be true, the case would still be here for review upon the record proper. However, respondent has suggested a situation which, if true, necessarily limits the scope of our review to the record proper.

Bill of Exceptions.

As above stated, there were two separate and distinct suits filed, each seeking to enjoin the payment and to secure the cancellation of different sets of warrants issued in payment for the land purchased by Phelps County. The two suits were not consolidated. The trials were separate. Separate appeals were granted.

In the abstract of the record filed in the case at bar there is incorporated a purported bill of exceptions, which shows on its face that it is a bill of exceptions in the case of J. A. Watson, plaintiff, v. Fred C. Kerr, H. R. McCaw, Robert McCaw, Fritz Durr and E. C. Cleino, defendants. It was in that case that the trial court found for defendants and plaintiff appealed and judgment was affirmed by this court. [Watson v. Kerr, 312 Mo. 549, 279 S. W. 692.] An examination of our files in that case shows that the persons named above were the parties defendant in that case. The parties defendant in the case at bar were Fred C. Kerr, H. R. McCaw and Fritz Durr, who were defendants in the companion case, and in addition thereto Ben Roach and Rolla State Bank. Robert McCaw and E. C. Cleino were not defendants in the case at bar.

One of the defendants' counsel has made an affidavit in opposition to respondent's motion to dismiss the appeal. In said affidavit it is not alleged that a separate bill of exceptions was filed in this case. It is alleged that "the testimony taken in the first cause and known in this court as 25986, and argued and submitted in this court aforesaid, was submitted as the evidence in the second cause.

which is the cause now pending in this court, before the Cir-
cuit Court of Franklin County, . . . with the single exception
that other warrants were offered by respondent upon which to base
his right to bring the suit now pending. . . ." Said affidavit then
proceeds to set forth what the records of the trial court show, but
nowhere alleges that any separate bill of exceptions was actually filed
in this case. Nor is it claimed that there was any agreement that
the bill of exceptions in the companion case might serve as a bill of
exceptions in the case at bar.

The abstract does not recite that the bill of exceptions incorporated
therein is the bill of exceptions filed in the case at bar. It contains
recital of leave to file a bill of exceptions, of extension of such leave,
of the approval of a bill of exceptions in the case and contains a copy
of a purported record entry showing the filing of a bill of exceptions
and that said bill of exceptions was made a part of the record in
this case. Immediately following this appear the words ''BILL OF
EXCEPTIONS,'' without any words indicating that such bill of
exceptions is the bill of exceptions referred to in previous recitals. If
there were any such identifying or connecting words, there would be
some reason to say that the bill of exceptions incorporated in the
abstract is the bill of exceptions referred to in the preceding recitals
and that a mere clerical error was made in giving the names of the
defendants the same as those in the companion case, instead of the
names of the persons actually defendants in the case at bar.

To sum up, the situation is this: The bill of exceptions incorpo-
rated in the abstract of the record purports on its face to be the bill
of exceptions in a different case. The abstract does not recite that
the bill of exceptions so incorporated is the bill of exceptions filed,
approved and made a part of the record in this case. Nor does the
affidavit filed by appellants even allege that the bill of exceptions
incorporated in the abstract is in fact the bill of exceptions filed in
this case. But its allegations are studiously confined to what the
record shows upon the point. From all of which we are driven to
the conclusion that the bill of exceptions incorporated in the ab-
stract of the record in this case is the bill of exceptions allowed and
filed in the companion case and cannot be accepted as a proper bill
of exceptions in the case at bar.

We know of no way by which a bill of exceptions filed and approved
in one case can be treated as a bill of exceptions in a different case.
Certainly this cannot be done in the absence of an agreement to
that effect. It was, of course, perfectly competent for the parties
to agree that the testimony given in the companion case should be
taken as the testimony in the case at bar. But such agreement stand-
ing alone could not do away with the necessity of preserving such tes-
timony in a bill of exceptions and filing such bill of exceptions in this

case and bringing it up in the abstract of the record. No proper bill of exceptions is shown to have been brought before us. Hence, there is nothing for review, except the record proper.

Such conclusion prevents us from reviewing the sufficiency of the evidence to support the judgment rendered and precludes us from considering any alleged procedural errors. The judgment is not challenged, except that it is not supported by the evidence. One of the assignments of error is that the petition fails to state a cause of action against appellants. This assignment is for consideration, for the reason that the petition is part of the record proper.

It is contended that there is no allegation in the petition that the county treasurer was about to or intended to pay out of the current funds of 1922 or 1923 any of the warrants which plaintiff sought to cancel. We fail to find any specific allegation to that effect. The **Threatened** petition was filed April 18, 1923, and alleged that there **Payment.** "is now in the county treasury of said county to the credit of the various funds sufficient to pay the said warrants and the holders of said warrants are demanding payment thereof in the order in which said warrants were so presented to the county treasurer." In their answer appellants admitted "that there is now in the treasury sufficient sums of money to pay such warrants, the funds being collected from the taxes for the year 1922, against which said funds these warrants are a legal charge, and that the holders of said warrants are asking that they be paid."

If there were sufficient funds for the year 1922, against which funds said warrants were a legal charge, to pay said warrants and the holders thereof were demanding payment and said warrants were unconditional on their face, as was also alleged, it would be the official duty of the treasurer to pay them upon presentation and demand. The presumption that the treasurer would perform his official duty and pay said warrants may be indulged and it would seem that the petition, at least inferentially and by necessary intendment, should be held to allege that the treasurer was about to and would do his official duty and pay said warrants unless restrained from so doing. At most the petition defectively stated a cause of action in such respect and was good after judgment. All of the facts are set out from which the trial court could find that the county treasurer, in the presumed performance of his official duty, was about to pay the warrants.

We have examined the cases cited to this point by appellant. They go no further than to hold that facts must be alleged tending to show that defendant is about to take some action which will result in injury to the plaintiff. One or more of the cases cited by appellants hold that the petition under review did not state a cause of action for an injunction because it appeared from the face of the peti-

tion itself that the alleged wrong had already been committed. We are satisfied that the petition is sufficient in this respect, particularly when it is attacked for the first time after judgment.

The sufficiency of the petition is also assailed because it does not allege facts showing "impending injury or mischief, irreparable and that the apprehension of such injury and such mischief is well founded." Cases cited in support of this contention are suits for injunc-

**Irreparable Injury.** tion between private persons to restrain alleged private wrongs wherein it was held that it should have been alleged that defendants were insolvent or that some other fact or facts existed which prevented the plaintiffs from having an adequate remedy at law in damages or otherwise. Such cases are not controlling in a suit against a public officer by a taxpayer to restrain alleged unlawful disbursement of public funds. The petition did allege that plaintiff "and other taxpaying citizens have no remedy except by injunction." Appellants have not suggested any remedy which taxpayers would have other than by injunction. Respondent would have no action against the county treasurer personally, if he paid the warrants. Payment of the warrants would therefore work irreparable injury to plaintiff and other taxpayers. In Williams v. School District, 167 Mo. App. 476, l. c. 481, a case cited by appellants, it was said: "The right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of a county, or the illegal creation of a debt which they in common with other property holders of the county may be otherwise compelled to pay, is also well settled. [Crampton v. Zabriskie, 101 U. S. 601.]"

The allegations of the petition in this respect cannot now be successfully assailed.

We find no other assignment of error in respect to any matter appearing in the record proper. A careful reading of such record suggests no defects therein destructive of the judgment rendered by the trial court. For that reason such judgment should be affirmed.

All concur, except *Graves, J.,* absent.